IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANITA SHARMA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:24-cv-1310-D-BN |
| | § | |
| CITY OF DALLAS, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Antia Sharma filed a *pro se* civil rights complaint against Defendant City of Dallas [Dkt. No. 1], which Senior United States District Judge Sidney A. Fitzwater referred to the undesigned United States magistrate judge for screening under 28 U.S.C. § 636(b) and a standing order of reference.

Although Sharma also paid the applicable filing fee, the Court, on its own motion, dismissed her initial complaint, against just the City, without prejudice to Sharma's ability to file an amended complaint. *See Sharma v. City of Dall.*, No. 3:24-cv-1310-D-BN, 2024 WL 3489396 (N.D. Tex. June 21, 2024), *rec. adopted*, 2024 WL 3489824 (N.D. Tex. July 19, 2024) [Dkt. Nos. 4 & 5].

Sharma filed a motion for leave to amend, *see generally* Dkt. No. 6, attaching to that motion a first amended complaint [*id.* at 6-12] (the "FAC").

The Court terminated the motion for leave as moot because Sharma was not required to move for leave and ordered the following:

[C]onsidering the FAC, Sharma again names the City as a defendant without including allegations to state a plausible claim for

municipal liability. *See, e.g.*, *Sharma*, 2024 WL 3489396, at *2-*3.

And, although Sharma does name an individual defendant, Brandon W. Massey, identified as a Dallas police officer, Sharma names this defendant only in his official capacity. *See* Dkt. No. 6 at 7.

"The performance of official duties creates two potential liabilities, individual-capacity liability for the person and official-capacity liability for the municipality." *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.,* 229 F.3d 478, 485 (5th Cir. 2000).

Where "'a defendant government official is sued in his individual and official capacity, and the city or state is also sued,' the 'official-capacity claims and the claims against the governmental entity essentially merge.'" *Harmon v. Dall. Cnty., Tex.*, 927 F.3d 884, 891 (5th Cir. 2019) (quoting *Turner,* 229 F.3d at 485).

And the standards applicable to pleading municipal liability apply to an official-capacity claim. *See, e.g.*, *Byrum v. City of Mesquite*, 126 F. App'x 670, 671 (5th Cir. 2005) (per curiam) ("A governmental entity or municipality, as well as officers thereof acting in their official capacity, can be held liable under § 1983 only if official policy or custom caused the deprivation of a constitutional right." (citations omitted)).

And, so, any official-capacity claim against Massey is not plausibly alleged for the same reasons that a claim against the City fails.

But, instead of recommending that Judge Fitzwater dismiss the FAC, the undersigned will allow Sharma an opportunity to file a second amended complaint, to allege a claim against Massey in his individual capacity and to either drop the City as a party or allege a claim against the City that conforms with the pleading standards previously explained. *See Sharma*, 2024 WL 3489396, at *2-*3.

And Sharma must file this second amended complaint by November 22, 2024.

Failure to do so will result in a recommendation that the first amended complaint be dismissed.

Dkt. No. 7 (cleaned up).

On December 17, 2024, Sharma moved for leave to file a second amended complaint, *see* Dkt. No. 8, attaching to that motion a proposed pleading [Dkt. No. 8-1] that again includes claims against the City and against Massey, in his official and personal capacities.

The undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should deny the motion for leave to amend in part

(to the extent that Sharma alleges a claim against the City of Dallas and Massey in an official capacity); grant the motion for leave in part (to the extent that Sharma alleges a claim against Massey in an individual capacity); and allow this lawsuit to proceed against Massey in that capacity.

## Discussion

The Court previously set out the standards applicable to alleging a claim against a municipality, *see Sharma*, 2024 WL 3489396, at *2-*3, and those standards need not be set out in full here.

But, in sum, "[a] municipality may be held liable for a constitutional violation 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" *Cope v. Coleman Cnty.*, No. 23-10414, 2024 WL 3177781, at *3 (5th Cir. June 26, 2024) (per curiam) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

And, through the motion for leave, not the proposed amended pleading itself, Sharma now alleges that she can meet these pleading standards and plausibly allege liability against the City (1) because "Massey used lethal force in the shooting killing of Cody Watkins on June 28, 2023 which leads to the conclusion based on comparison with similar personnel and situations that the Defendant Brandon W. Massey may be a threat to the public that the Defendant has been entrusted by the City of Dallas to protect"; (2) based on the City's failure to train its officers, as evidenced by Sharma's citing ten or so civil lawsuit against the City "over the past 3 years"; (3)

because of rules that Sharma alleges were implemented by a former Dallas police chief; and (4) the existence of an October 2024 complaint filed against the City for use of excessive force, a July 2023 investigative report from the Dallas Morning News, a November 2019 audit of the Dallas Police Department, and a review of another case ordered by the Office of Citizen Police Oversight. Dkt. No. 8 at 2-6.

The Court *sua sponte* dismissed Sharma's initial claims against the City because they faltered at *Monell*'s initial prong. That is because

> the single incident at issue is not enough to allege a policy.
>
> While an official policy may include "practices so persistent and widespread as to practically have the force of law," to plausibly "plead that a practice is so persistent and widespread as to practically have the force of law, a plaintiff must do more than describe the incident that gave rise to his injury." *Johnson v. Harris Cnty.*, 83 F.4th 941, 946 (5th Cir. 2023) (cleaned up).
>
> So, almost without exception, allegations "limited to the events surrounding the plaintiff" himself cannot constitute "an allegation of a *de facto* policy." *Culbertson v. Lykos*, 790 F.3d 608, 629 (5th Cir. 2015).
>
> Instead, "[a] plaintiff can establish a policy by pointing to similar incidents that are sufficiently numerous and have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of [municipal] employees." *Robinson v. Midland Cnty.*, 80 F.4th 704, 710 (5th Cir. 2023) (cleaned up).

*Sharma*, 2024 WL 3489396, at *3.

And it appears that Sharma now attempts to cure this deficiency through the motion for leave, as set out above.

But these proposed allegations, too, are not sufficient to allege *Monell* liability.

First, to the extent that Sharma relies on rules implemented by a former Dallas police chief, Sharma fails to allege facts to support the policymaker prong.

A complaint need "not specifically identify [the municipality's] policymaker,"

- 4 -

*Balle v. Nueces Cnty., Tex.*, 952 F.3d 552, 559 (5th Cir. 2017), because that identity "is a question of state law," and "courts should not grant motions to dismiss § 1983 cases 'for imperfect statement of the legal theory,'" *Groden v. City of Dall., Tex.*, 826 F.3d 280, 284-85 (5th Cir. 2016) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988), then quoting *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam)).

But, to plausibly allege the policymaker prong of *Monell* liability, a complaint must still contain factual content to allow the Court to reasonably infer "that the challenged policy was promulgated or ratified by the city's policymaker." *Id.* at 285; *see also Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 271 (5th Cir. 2019) ("Because the 'specific identity of the policymaker is a legal question that need not be pled,' plaintiffs can state a claim for municipal liability as long as they plead sufficient facts to allow the court to reasonably infer that the [policymaker] either adopted a policy that caused [their] injury or delegated to a subordinate officer the authority to adopt such a policy. In other words, plaintiffs must plead facts that sufficiently connect the policymaker ... to the allegedly unconstitutional policy." (citing *Groden*, 826 F.3d at 284, 286)).

As to most of the other allegations intended to show that the City is liable, none of which can be classified as an official policy of the City of Dallas, Sharma may provide them to demonstrate a custom or practice of the City that could qualify as an official policy. *See James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) ("Official policy can arise in various forms. It usually exists in the form of written policy

statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" (citations omitted)); *see also Thompson v. City of Dall.*, No. 3:23-cv-2056-L, 2024 WL 4999193, at \*3 (N.D. Tex. Sept. 23, 2024) ("The failure to provide proper training or supervision may fairly be said to represent a policy for which the municipality is responsible, and for which it may be held liable if it actually causes injury. And, although a separate theory of municipal liability, the same standard applies both to a failure to train or to supervise claim and to a municipal liability claim." (cleaned up)), *rec. accepted*, 2024 WL 4648155 (N.D. Tex. Oct. 31, 2024).

But "[a] city cannot be liable for an unwritten custom unless '[a]ctual or constructive knowledge of such custom' is attributable to a city policymaker." *Peña v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018) (quoting *Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 808 (5th Cir. 2017)); *see also Robinson*, 80 F.4th at 711 ("[P]laintiffs' theory hinges entirely on the idea that if enough individuals do something, it becomes the fault of the policymaker. [But w]ithout a showing of knowledge and acquiescence, such a theory is no more than vicarious liability and cannot survive a motion to dismiss." (citation omitted)).

"To establish a custom, a plaintiff must demonstrate (and, at the pleading stage, must plausibly plead) 'a pattern of abuses that transcends the error made in a single case.'" *Pinedo v. City of Dall., Tex.*, No. 3:14-cv-958-D, 2015 WL 5021393, at \*5 (N.D. Tex. Aug. 25, 2015) (quoting *Piotrowski v. City of Hous.*, 237 F.3d 567, 582 (5th

Cir. 2001)).

A pattern requires "sufficiently numerous incidents," as opposed to "isolated instances." *McConney v. City of Hous.*, 863 F.2d 1180, 1184 (5th Cir. 1989) (cleaned up).

That is, "[w]here prior incidents are used to prove a pattern, they must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009) (cleaned up).

And "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather, notice of a pattern of [fairly] similar violations is required." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) (cleaned up).

Here, the prior incidents that Sharma relies on – where, for example, she fails to provide the facts and circumstances underlying each lawsuit or investigation cited and explain how those instances are similar to the harm she allegedly suffered – "do not allow the Court to reasonably infer that a widespread pattern of fairly similar violations exists, such 'that the course of conduct warrants the attribution to the [City's] governing body of knowledge that the objectionable conduct [Sharma alleges occurred to her] is the expected, accepted practice of city employees.'" *Thompson v. City of Dall.*, No. 3:23-cv-2056-L, 2024 WL 4999193, at *8 (quoting *Webster v. City of Hous.*, 735 F.2d 838, 842 (5th Cir. 1984) (en banc) (per curiam); collecting cases

concerning the sufficiency of allegations of prior specific instances intended to plausibly show a widespread practice).

Finally, Sharma may allege that the City's failure to fire or otherwise discipline Massey establishes *Monell* liability under a ratification theory, a narrow exception to the requirement that a plaintiff plausibly allege the three required prongs.

But Sharma's proposed pleading contains neither allegations of sufficiently extreme conduct nor allegations that an authorized policymaker approved of – and therefore ratified – the alleged conduct of an individual officer.

"Concerning ratification, if 'authorized policymakers approve a subordinate's decision and the basis for it, their ratification [is] chargeable to the municipality because their decision is final.'" *Sligh v. City of Conroe, Tex.*, 87 F.4th 290, 303 (5th Cir. 2023) (per curiam) (quoting *World Wide Street Preachers Fellowship v. Twn. of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009)).

But "[s]imply not repudiating [police conduct] does not mean that a policymaker ratifies it. If so, that would cross the line into impermissible respondeat superior liability for a municipality." *Dobbins v. City of Dall.*, No. 3:20-cv-1727-K, 2021 WL 3781927, at *2 (N.D. Tex. Aug. 25, 2021); *see also Peterson*, 588 F.3d at 849 (even "defend[ing] conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality").

Plus, "unless the subordinate's actions are sufficiently extreme – for instance, an obvious violation of clearly established law – a policymaker's ratification or defense of his subordinate's actions is insufficient to establish an official policy or

custom." *Sligh*, 87 F.4th at 303 (cleaned up).

And, so, "underlying conduct" that, "while unconstitutional, [may] not [be] sufficiently extreme to qualify for a finding of ratification." *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 395-96 (5th Cir. 2017) (citing *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985)); *see also Montgomery v. Hollins*, No. 3:18-cv-1954-M-BN, 2019 WL 2424053, at *8 (N.D. Tex. May 8, 2019) ("[T]he Fifth Circuit has limited the theory of ratification to extreme factual situations, such as officers' killing of the innocent occupant of a truck or their shooting of a fleeing suspect in the back." (cleaned up)), *rec. accepted*, 2019 WL 2422493 (N.D. Tex. June 10, 2019).

In sum, Sharma has not alleged a plausible claim against the City

And, because Sharma amended her claims against the City after the Court apprised her of the proper pleading standards, Sharma has now pleaded her best case against the City and shown that further leave to amend would be futile, and, so, the Court should dismiss the claims against the City with prejudice. *See, e.g.*, *Wiggins v. La. State Univ. – Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) ("Ordinarily, a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed. [Federal Rule of Civil Procedure] 15(a) provides that leave to amend shall be freely given when justice so requires. The language of this rule evinces a bias in favor of granting leave to amend. Granting leave to amend, however, is not required if the plaintiff has already pleaded her best case. A plaintiff has pleaded her best case after she is apprised of the insufficiency of her complaint. A plaintiff may indicate she has not pleaded her best case by stating material facts

that she would include in an amended complaint to overcome the deficiencies identified by the court. Similarly, a district court need not grant a futile motion to amend." (cleaned up)).

As to Massey, Sharma has alleged a Fourth Amendment violation against him individually that survives screening.

And, so, the Court should allow this lawsuit to proceed against Massey individually and terminate the screening referral to the undersigned.

**Recommendation**

The Court should deny Plaintiff Antia Sharma's motion for leave to file a second amended complaint [Dkt. No. 8] in part – to the extent that Sharma alleges a claim against Defendant City of Dallas and Defendant Brandon W. Massey in an official capacity – and grant the motion for leave in part – to the extent that Sharma alleges a claim against Massey in an individual capacity. And the Court should dismiss the claims against the City with prejudice but allow the claims against Massey in an individual capacity to proceed and therefore terminate the screening referral to the magistrate judge.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and

specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

    DATED: December 20, 2024

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE